[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This complaint returnable January 16, 1990 contains two counts. For purpose of this memorandum, only the first count is relevant. The complaint summoned 14 defendants: Kosch, Thomas Thibault, Andelma Thibault, Monson, Edwards, Cote, Harmon, Himmelberg, Lake and Leitze. No service was obtained upon the named defendants Bedford, Norman Erbrecht, Elizabeth Erbrecht and Halversen. Attorney Robert C. Leitze, a named defendant, appeared for thirteen of these defendants including those who were not served on February 13, 1990. On April 26, 1990, he filed an answer and five special defenses in their behalf. The remaining defendant, Louise Kosch, retained separate counsel. The plaintiff withdrew its complaint against this defendant on September 16, 1993.
The remaining defendants answered the complaint by CT Page 9653 admitting the following paragraphs of the complaint:
 (15) Defendants formed an investment general partnership known as "SHORELINE NUMISMATIC INVESTMENT PARTNERSHIP I" to facilitate the purchase of certain gold coins for purposes of investment.
 (16) Each and every defendant was a general partner of said general partnership.
 (17) On December 19, 1983 plaintiff KAGIN'S NUMISMATIC INVESTMENT CORP., upon the express request of defendant ALAN L. MONSON, general partner, sold certain gold coins to the partnership.
 (19) Said general partners paid $26,000.00 towards the purchase of said coins.
 (20) CDI/Churchill Group, an investment concern, paid an additional $13,000.00 towards said purchase.
The defendants denied paragraph 21 of the complaint which states:
 21. Despite demand, the purchase balance of $13,000.00 remains wholly unpaid, and the defendants have failed and continue to fail to make payments.
The defendants filed five special defenses. The first special defense alleged that plaintiff transacted business in the State of Connecticut without a certificate of authority in violation of § 33-396 of the Connecticut General Statutes and is thereby barred from maintaining the instant action by the provisions of § 33-412 of the Connecticut General Statutes.
In their second special defense, the defendants charged the corporation and its president with wrongfully inflating of the value of certain coins which was done knowingly, fraudulently and intentionally in order to induce the defendants to purchase same.
Defendants' third special defense expressed a breach of warranty by the defendants.
Defendants' fourth special defense alleges that the CT Page 9654 items, the coins, were sold on approval and could be returned for any reason within thirty days or sixty days whenever the items did not correspond to grades established by the American Numismatic Association. In essence this defense alleged a breach of an additional warranty by defendants.
Defendants' fifth special defense incorporated all the allegations of the first four special defenses and alleged that they constitute a violation of the provisions of Connecticut General Statutes, Chapter 735a, Section 42-110a, et. seq.; i.e., CUTPA, the Connecticut Unfair Trade Practices Act.
The plaintiff's reply denied the substance of each of these special defenses.
Subsequent to the closing of the pleadings, the plaintiff filed a motion to disqualify Attorney Robert C. Leitze on December 22, 1993 (#116). The plaintiff asserted the following reasons in support of the motion:
1. Attorney ROBERT C. LEITZE is a named defendant in the instant action, which involves 14 named defendants.
2. Plaintiff has requested the deposition of several of said defendants, including ROBERT C. LEITZE.
3. Plaintiff reasonably expects to call ROBERT C. LEITZE as a witness in this matter and wishes to avoid the potential difficulties as may arise if defendant's counsel is called to the stand during the trial.
The court granted this motion on January 6, 1994.
As a consequence of the granting of this motion, twelve of the thirteen defendants named in the complaint were unrepresented at the trial which commenced on June 7, 1994. Defendant Attorney Robert Leitze was present at the trial representing himself. Also present at the trial was defendant Lewis M. Lake who was called as a witness on behalf of the defendant Robert Leitze. Testimony was received from Donald Kagin, the president of the plaintiff. The plaintiff called defendant Robert Leitze. Testimony was also received from defendant Lewis Lake. Voluminous exhibits were received and marked in evidence. Subsequent to the hearing, both the plaintiff and the defendant Robert Leitze submitted memoranda. CT Page 9655 The posttrial memoranda of defendant Leitze listed five specific headings, four of which were directed at the testimony of the plaintiff's president at the trial. This testimony alleged that defendants were bound by an agreement between the plaintiff represented by its president and the defendant partnership represented by its managing partner, Alan Monson, which these parties negotiated when the agreed upon lender, CD Investment Group repudiated its commitment to loan the partnership $26,000 upon the security of the partnership portfolio. The court notes there is no specific reference to any such agreement in plaintiff's complaint. Plaintiff's posttrial memorandum, however, maintains the agreement is binding because a managing partner has the authority to bind a partnership, § 34-47, Connecticut General Statutes.
Without admitting the existence of such an agreement, defendant argues in his memorandum that as a result of the existence of express written contracts by the named defendants, including himself, the claim on the part of the plaintiff that a superceding [superseding] and intervening implied (oral) contract has been made is both without foundation and is unenforceable under the Statute of Frauds, § 52-550 of the Connecticut General Statutes and Statute of Limitations, § 52-581(a) of the Connecticut General Statutes as applied to oral executory contracts. No reference to either of these statutes is to be found in any of the defendants' five special defenses.
The fifth heading of defendants' posttrial memorandum argues in support of defendants' first special defense that plaintiff's claim is barred by § 33-412 of the Connecticut General Statutes.
The following findings are made by the court.
The Shoreline Numismatic Investment Partnership I was drafted by the defendant Attorney Robert Leitze on or about November 7, 1983 (Exhibit N). The partnership was general in nature. Alan C. Monson, a defendant, was designated as managing general partner. Monson was an independent financial planner who promoted this partnership with the advice and encouragement of the plaintiff. The partnership was organized (to invest in, acquire, own, hold, place in safety, build upon, alter the holdings of, mortgage, grant security interests with respect to, sell or otherwise dispose of and in all or any manner deal with the rare coins and currency of any kind and description CT Page 9656 (hereinafter sometimes referred to as "property") (Exhibit N — paragraph 1). The partnership agreed to buy a portfolio from the plaintiff. On December 19, 1993, plaintiff, upon the request of defendant Alan Monson, general partner, sold certain gold coins to the partnership. Complaint, paragraph 19, admitted by defendants (Exhibit C). The parties agreed that the sale was leveraged with the general partners contributing $26,000 in cash (Exhibit A) and borrowing the remaining $26,000 from CD Investment Group (Exhibit C). The $26,000 from CD Investment Group was to be paid directly to plaintiff from the consideration received by the individual partners for their individual notes to CD Investment Group. Each partner agreed to pledge his partnership share in the partnership portfolio to secure his individual note. The leveraged sale was the brainchild of the plaintiff. It involved mutual promises from the plaintiff, the individual partners and the CD Investment Group. The defendants were to execute and deliver their notes to the lender, CD Investment Group together with their pledged interest in the partnership portfolio. CD Investment Group agreed to lend each partner an amount equivalent to their cash contribution. Exhibits A and H. The plaintiff agreed to deliver the $52,000 partnership portfolio directly to CD Investment Group at the closing in return for the proceeds of the partner's individual notes. This agreement of leverage was organized by the plaintiff to promote increased sales of the product. The plaintiff obtained the commitment of the CD Investment Group to finance the $26,000 balance due on the portfolio. Exhibit H is a copy of one of the partner's notes and pledge. It was prepared on a CD Investment Group form, signed in Connecticut by an individual partner for delivery in Suffern, New York. It contained a specific authorization to the plaintiff to deliver the partnership portfolio to the CD Investment Group and a specific authorization to CD Investment Group to pay to the plaintiff in payment for the partnership portfolio the proceeds of the loan.
At the closing of these loans in Suffern, New York, on January 10, 1985, Alan Monson delivered the notes to the lender, but the lender failed to honor its commitment to each borrower to give value equivalent to the face amount of the note. CD Investment Group refused to honor the face amount of the notes and instead agreed to accept the notes and the portfolio granting to each borrower 50 percent of the face value of the note. Despite this breach on the part of the lender, plaintiff delivered the partnership portfolio to the lender. As a result, the partners who anticipated receiving $26,000 for their pledge CT Page 9657 of $52,000 got only $13,000. The proceeds of the loan (loans) were pursuant to the agreement "to be paid to seller (or as seller directs), in payment for such property, the proceeds of the loan made to me by Lender when said property is received by the Lender."
The partners collectively borrowed $13,000 on the individual notes which each signed.
At this point, January 10, 1984, the plaintiff had received $39,000 for the $52,000 portfolio sold to the partnership. Donald Kagin testified that he and Alan Monson agreed that the individual partners would execute new notes to him for the $13,000 balance. As of this date, neither the partnership as an entity or any individual defendant has executed a new note to the plaintiff. The portfolio remains in the possession of CD Investments (Exhibit M), dated December 4, 1990. Exhibit M indicates that the total demand necessary to satisfy the various individual loans to the partnership to the partners by CD Investment Group is $21,396.69, as of that date, December 4, 1990 (principal $12,500) (interest $9,146.69). Commencing in January 1985 (Exhibit K), plaintiff requested interest and service fees from Alan Monson see also Exhibit F. When the effort was unsuccessful, plaintiff made a direct approach to one of the partners. By letter of March 13, 1987 (Exhibit G), the plaintiff sought the principal amount of $13,000 plus accumulated interest from the partners. Thereafter, on or about December 18, 1989, the plaintiff instituted suit against the named individuals on the partnership.
The evidence would not support a finding that Alan Monson agreed on behalf of the partnership to obtain new notes from the partners to replace those he improperly delivered to CD Investment Group for less than the amount CD Investment Group had agreed to loan. The evidence is also less than persuasive that at the January 10, 1984 closing Allan Monson, the managing general partner, agreed with Donald Kagen [Kagin], plaintiff's president, that he would obtain notes from the individual partners totalling $13,000 in consideration of the $13,000 credit the plaintiff had extended to the partnership after the CD Investment Group repudiated its commitment to loan $26,000 against the partnership portfolio. The court finds that the managing general partner, Alan Monson, lacked the express authority to deliver the defendants' notes to CD Investment Group for less than the amount originally committed by CD CT Page 9658 Investment Group. The court finds that the plaintiff violated a specific agreement of leverage it had entered into with the partnership and each of the individual partners when it delivered the $52,000 portfolio to CD Investment Group for a total of $13,000 instead of the $26,000 it had negotiated on behalf of the partnership and the partners. The defendant offered no evidence in support of special defenses two, three, four and five. Accordingly, the court finds that defendant has not sustained his burden of proof on these issues. With regard to defendants' first special defense that the plaintiff is barred from maintaining the instant action pursuant to § 33-412 of the Connecticut General Statutes, the court finds that the defendant was not transacting business in the State of Connecticut in violation of § 33-396 of the Connecticut General Statutes, EljamMason Supply, Inc. v. Donnelly Brick Co., 152 Conn. 483 (1965);Sawyer Savings Bank v. American Trading Co., 176 Conn. 185
(1978).
On the basis of the aforementioned findings, the court concludes that the plaintiff's sole agreement with the defendants' partnership and the defendants' partners was that memorialized by Exhibit C and Exhibits I and J. This agreement provided for payment of the remaining balance on the coin portfolio from the proceeds of the loan and pledge agreement with CD Investment Group when the property is received by the lender. The lender, CD Investment Group, received the property of the partners and the partnership; the seller plaintiff received the proceeds of the loan. Plaintiff cannot now be heard to say that the defendants agreed to pledge 100 percent of their portfolio to one lender and remain indebted for a balance to another in the face of the express agreement of the parties.
Judgment may enter for the defendant Robert Leitze on the first count of the complaint.
Dorsey, J. State Trial Referee